UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| JOE C. JACKSON, | ) | No. 07 B 18515 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| In re: | ) | |
| | ) | |
| JOE C. JACKSON, | ) | No. 08 B 20776 |
| | ) | |
| Debtor. | ) | Judge Goldgar |

## MEMORANDUM OPINION

Two chapter 13 cases filed by debtor Joe C. Jackson are before the court for ruling following an evidentiary hearing under section 329(b) of the Bankruptcy Code to examine the fees of Jackson's lawyer, Timothy K. Liou. The court now makes the following findings of fact and conclusions of law pursuant to Bankruptcy Rules 7052 and 9014(c). For the reasons discussed below, Liou will be ordered to disgorge all of the fees Jackson paid him in the two cases.

### 1. Jurisdiction

The court has subject matter jurisdiction over these cases pursuant to 28 U.S.C. § 1334(a) and the district court's Internal Operating Procedure 15(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

### 2. Facts

Jackson is a general contractor who does business in Lake County, Illinois,

with his two sons. (Tr. at 35-36). Liou is an Illinois lawyer who has been practicing since 1995. (*Id.* at 10). Liou has been representing debtors in chapter 13 bankruptcy cases since 1997 and does so as a regular part of his practice. (*Id.* at 10-11). He professes to be familiar with the Bankruptcy Code, the Bankruptcy Rules, and the local rules of this court. (*Id.* at 11).

On August 9, 2007, Jackson retained Liou to file a chapter 13 bankruptcy case for him. (*See* L. Ex. 1).[1] Jackson and Liou entered into a fee agreement covering Liou's services in the case. (*Id.*). The agreement was one Liou prepared rather than the court's Model Retention Agreement. (Tr. at 4).[2] Under it, Jackson would pay Liou $4,995 for "all contemplated legal services to be rendered." (L. Ex. 1). "Contemplated legal services" were the bare minimum to commence the case: counseling on chapter 13 versus chapter 7, preparing the petition, schedules, plan, and other papers, filing the petition, and notifying creditors of the stay. (*Id.*).

---

[1]   Liou's exhibits are cited as "L. Ex. ___." Trustee Stearns's exhibits are cited as "T. Ex. ___." The hearing transcript is cited as "Tr. at ___." Entries on the court's docket in the two cases are cited as "First Case Dkt. No. ___" and "Second Case Dkt. No. ___," respectively. The court can take judicial notice of its own records. *Griffin v. United States*, 109 F.3d 1217, 1218 n.1 (7th Cir. 1997); *In re Berg*, 356 B.R. 378, 379 n.1 (Bankr. E.D. Pa. 2006).

[2]   The bankruptcy court in this district has adopted a form Model Retention Agreement for use in chapter 13 cases. *See* Local Form 23c. An attorney who enters into the Model Retention Agreement with a debtor becomes eligible for the court's flat (or "no-look") fee. Without submitting an itemization of services, the attorney can request and receive up to $3,500 in compensation for representing the debtor through the closing of the case. *See* Gen. Order No. 07-02; *see generally In re Geraci*, 138 F.3d 314, 320-21 (7th Cir. 1998) (authorizing bankruptcy courts to set a presumptively reasonable fee in consumer bankruptcy cases and award that fee without an itemization of services).

Excluded were almost all post-petition legal services: amending schedules, objecting to claims, filing motions to sell real estate, appearing in court more than once on a creditor's motion before confirmation, appearing in court at all on a trustee's motion to dismiss, and so on. (*Id.*).

On October 8, 2007, Jackson paid Liou $4,700 of the amount called for under the agreement; the remaining $295 was paid the next day. (Tr. at 5-6; L. Ex. 2). It was Liou's understanding that the $4,995 was simply a retainer, and more fees would be owed if he performed more services for Jackson. (Tr. at 5, 8; *see also* L. Ex. 5). Jackson apparently had the same understanding. (Tr. at 22-23, 33-34).

On October 9, 2007, Liou filed a chapter 13 case, No. 07 B 18515, for Jackson. (First Case Dkt. No. 1). Along with the petition and schedules, Liou filed the "Disclosure of Compensation of Attorney for Debtor" required under Bankruptcy Rule 2016(b). (T. Ex. 1). The disclosure statement said that "[f]or legal services" Liou had agreed to accept $4,995, that he had been paid $4,995, and that the "balance due" him was "$0.00." (*Id.*). It also recited that in return for "the above-disclosed fee" Liou had "agreed to render legal service for all aspects of the bankruptcy case," except for "representation of the debtor in adversary proceedings and other contested bankruptcy matters." (*Id.*). Following that recitation, Liou added: "Services as provided in attached Attorney Fee Agreement." (*Id.*). No agreement was attached. (T. Ex. 1; *see generally* First Case Dkt. No. 1).

Liou also filed the required Statement of Financial Affairs ("SOFA") for Jackson. (T. Ex. 2). Item No. 9 of the SOFA asked about "payments related to debt

counseling or bankruptcy" and required Jackson to "[l]ist all payments made . . . on behalf of the debtor to any persons, including attorneys, for consultation concerning . . . relief under bankruptcy law" in the year before the case was filed. (*Id.*). Jackson did not list the $4,995 paid to Liou but checked the box next to the word "None." (*Id.*; Tr. at 15).

Jackson's case was short-lived. He proposed a plan in which the monthly payment was $4,995.96 – the same amount as Liou's retainer. (First Case Dkt. No. 7). He later proposed amended plans increasing the plan payment to $5,391.96 (*id.*, No. 28) and $6,056.96 (*id.*, No. 48). But Jackson must have been unable to make his plan payments, because in February 2008 the trustee moved to dismiss the case for failure to make payments and failure to provide tax returns. (*Id.*, No. 38). Several creditors also moved to modify the stay or to dismiss. (*Id.*, Nos. 34, 36, 67). On June 27, 2008, the court granted the motions to modify the stay and dismissed the case on the trustee's motion. (*Id.*, Nos. 70-73). No plan was ever confirmed.

In early July, just days after the first case was dismissed, Liou met with Jackson again. (Tr. at 6). Jackson arranged to return at the end of the month and bring with him $12,185.37. Of that sum, $5,859.50 would be applied to fees for the dismissed case; the remainder, $6,325.87, would serve as the retainer for a new chapter 13 case Liou would file. (Tr. at 6, 23; L. Exs. 3, 5). Jackson paid Liou the $12,185.67. (Tr. at 9). Liou never supplemented his disclosure statement in the first case, however, because that case "was dismissed and disposed of." (Tr. at 10).

On August 8, 2008, Liou filed a second chapter 13 case, No. 08 B 20776, for

Jackson. Liou again filed the required Rule 2016(b) disclosure statement. (T. Ex. 3). The disclosure statement said that "[f]or legal services" Liou had agreed to accept $6,325.87, that he had been paid $6,325.87, and that the "balance due" him was "$0.00." (*Id.*). It recited that in return for "the above-disclosed fee" Liou had "agreed to render legal service for all aspects of the bankruptcy case," except for "representation of the debtor in adversary proceedings and other contested bankruptcy matters." (*Id.*). Following that recitation, Liou added: "Services as provided in attached Attorney Fee Agreement." (*Id.*). Again, no agreement was attached. (T. Ex. 3; *see generally* Second Case Dkt. No. 1). There was no evidence of a fee agreement between Liou and Jackson for the second case.

Liou also filed the required SOFA for Jackson in the second case. (T. Ex. 4). As in the first case, Jackson checked the box for "None" in answer to the question about payments to attorneys for consultation concerning bankruptcy relief in the year before the commencement of the case. (*Id.*; Tr. at 17-18). Jackson checked "None" although he had paid Liou $6,325.87 for the second case and paid him more than $17,000 for bankruptcy work in the year before the second case was filed.

In both cases, the decision to check "None" was Liou's. (Tr. at 12). He testified that in his view Item No. 9 on the SOFA duplicates the Rule 2016(b) disclosure statement, and "[f]or that reason, we rarely fill out the answer to question 9." (*Id.*). In fact, Liou said, "many practitioners either forget or don't bother" (*id.*), and he claimed "it has never been an issue" with the standing chapter 13 trustees or with the interim trustees in chapter 7 cases (*id.* at 13).

-5-

Jackson's second case did not last even as long his first. Liou neglected to move under section 362(c)(3)(B) of the Code to extend the stay (Tr. at 16), and as a result the stay terminated on September 7.[3/] Apparently recognizing Jackson no longer had the protection of the stay, on September 9 Liou filed a motion seeking voluntary dismissal of the case. (Second Case Dkt. No. 18). But that motion was later withdrawn (*id.*, No. 33), apparently because Liou had managed to negotiate agreed orders imposing the stay (*see id.*, Nos. 38-40; Tr. at 16).

Jackson proposed a plan in the second case in which the monthly payment was $6,325.20 – again the same amount as Liou's retainer. (*Id.*, No. 7). He later proposed a modified plan lowering the payment to $5,080.20 (*id.*, No. 19), and in late October the modified plan was confirmed (*id.*, No. 46). After confirmation, however, Jackson missed three plan payments, and by January 2009 he was more than $17,000 in default. (*See id.*, No. 54). The trustee moved to dismiss the case. (*Id.*). On January 30, 2009, the trustee's motion was granted and the case dismissed. (*Id.*, No. 55).

Meanwhile, the trustee had learned about Jackson's fee payments to Liou at

---

[3/]   Under section 362(c)(3), when a debtor has had another bankruptcy case dismissed in the preceding year, the debtor's new case is presumed not to have been filed in good faith, and the automatic stay terminates on the 30th day after the filing of the new case unless the court extends the stay. *See* 11 U.S.C. § 362(c)(3). This very general description of a difficult statute glosses over its complexities and the controversies they have produced – among them, the extent to which the stay terminates. *See generally* Laura B. Bartell, *Staying the Serial Filer – Interpreting the New Exploding Stay Provisions of § 362(c)(3) of the Bankruptcy Code*, 82 Am. Bankr. L.J. 201 (2008). For purposes of this decision, it is enough to know that the dismissal of Jackson's first case brought section 362(c)(3) into play and that Liou did nothing to forestall its effect.

the creditors meeting in the second case (*see* Second Case Dkt. No. 27, ¶ 10), and the trustee moved in both cases to have Liou's fees examined (*see* First Case Dkt. No. 79; Second Case Dkt. No. 27). The motions were granted, and a hearing was held on January 22, 2009, just before the second case was dismissed.

### 3. Discussion

Liou will be required to disgorge the $17,180.37 he charged Jackson for the two chapter 13 cases. Disgorgement is necessary as a sanction for Liou having filed false Rule 2016(b) disclosure statements in both cases. Even if the disclosure statements had been accurate, moreover, disgorgement of most of the fees would be required because the work Liou performed in the two cases did not remotely justify fees exceeding $17,000.[4]

#### a. False Rule 2016(b) Disclosure Statements

Section 329(a) of the Code requires every attorney representing a debtor in a bankruptcy case to "file with the court a statement of the compensation paid or

---

[4] Liou cannot be faulted, however, for failing to file applications for compensation, as the trustee argues. An application for compensation under Bankruptcy Rule 2016(a) and court approval of the application under section 330(a) of the Code are necessary only when an attorney is compensated "from the estate." Fed. R. Bankr. P. 2016(a); *see* 4 Keith M. Lundin, *Chapter 13 Bankruptcy* § 294.1 at 294-1 to -2 (3d ed. 2000 and Supp. 2007-1). Jackson made his payments to Liou before the first case was filed and between the dismissal of the first case and the filing of the second. Because the payments were made when no case was pending, Liou was not compensated from the bankruptcy estate. The court's Standing Order dated December 1, 2004, which the trustee cites in support of his argument, addresses how required applications for compensation must be noticed for hearing. It does not say when an application is required.

-7-

agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case." 11 U.S.C. § 329(a). Bankruptcy Rule 2016(b) establishes when the disclosure statement must be filed: (1) within 15 days after the order for relief; (2) at any other time the court directs; and (3) after any payment or agreement not previously disclosed. Fed. R. Bankr. P. 2016(b). All compensation an attorney receives in the applicable period must be disclosed; it makes no difference whether the attorney will be compensated from the estate or from some other source. *In re Redding*, 263 B.R. 874, 878 (B.A.P. 8th Cir. 2001); Lundin, *supra*, § 294.1 at 294-2 to -3.

Section 329 reflects the Congressional concern that a debtor's payments to his attorney present a "serious potential for evasion of creditor protection provisions of the bankruptcy laws." H.R. Rep. No. 95-595, at 329 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6285. It also reflects a concern that the payments present a "serious potential for overreaching by the debtor's attorney," *id.* -- in other words, that a "failing debtor" will be tempted "'to deal too liberally with his property in employing counsel to protect him in view of financial reverses and probable failure,'" *In re Perrine*, 369 B.R. 571, 580 (Bankr. C.D. Cal. 2007) (quoting *Conrad, Rubin & Lesser v. Pender*, 289 U.S. 472, 477-78 (1933) (internal quotation omitted)); *see also Turner v. Davis, Gillenwater & Lynch (In re Investment Bankers, Inc.)*, 4 F.3d 1556, 1565 (10th Cir. 1993). Payments a debtor makes to his attorney should therefore be subjected to "careful scrutiny." H.R. Rep. No. 95-595, at 329 (1977),

*reprinted in* 1978 U.S.C.C.A.N. 5963, 6285.

To that end, an attorney must "lay bare all [his] dealings" with the debtor concerning compensation. *In re Saturley*, 131 B.R. 509, 517 (Bankr. D. Me. 1991). The disclosures he makes must be "precise and complete." *Berg*, 356 B.R. at 381 (internal quotation omitted). "Coy or incomplete disclosures" that force the court "to ferret out pertinent information" will not do, *Saturley*, 131 B.R. at 517; *see also Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.)*, 63 F.3d 877, 881 (9th Cir. 1995), even if they are merely the result of negligence or inadvertence, *Jensen v. U.S. Trustee (In re Smitty's Truck Stop, Inc.)*, 210 B.R. 844, 848-49 (B.A.P. 10th Cir. 1997). Very simply, "[a]nything less than the full measure of disclosure" is unacceptable. *Saturley*, 131 B.R. at 517.

Liou failed to meet his section 329(a) obligations not once but twice, because in each chapter 13 case he misrepresented his fee and fee arrangement. In the first case, Jackson paid Liou a $4,995 retainer and entered into a fee agreement under which additional fees would be due for most post-petition services. But Liou's disclosure statement revealed none of this. It said Liou had agreed to a fee of $4,995 and been paid the full amount, leaving "$0.00" due. (T. Ex. 1). In fact, Jackson paid Liou an additional $5,859.50, for a total of $10,890.50, more than twice what the disclosure statement showed. The disclosure statement also said that in exchange for the $4,995 fee, Liou would provide "legal service for all aspects of the bankruptcy case" except adversary proceedings and contested matters. (*Id.*). Liou never disclosed that his fee agreement with Jackson limited his services to the

initial filing. The disclosure statement mentioned an "attached Attorney Fee Agreement," but no agreement was attached. (*Id.*).

It was much the same again in the second case. Jackson paid Liou $6,325.87 at the outset of the case, a sum intended only as an "initial retainer." (T. Exs. 3, 5). But no one would have known that from Liou's disclosure statement. As before, the disclosure statement said Liou had agreed to a particular fee – this time $6,325.87 – and been paid that amount, leaving "$0.00 due." (T. Ex. 3). There was no mention of a retainer. As before, Liou represented that in exchange for the disclosed fee he would perform "legal service for all aspects of the bankruptcy case" except adversary proceedings and contested matters. (*Id.*). Liou again referred to an "attached" fee agreement, but no agreement was attached, and no evidence showed there was any written fee agreement for the second case.

Compounding the problem, in each case Liou had Jackson file a SOFA stating that in the year preceding the case Jackson had made *no* payments to anyone, including attorneys, for consultation concerning relief under the bankruptcy laws. (T. Ex. 2, 4). Those statements were false, of course, because Jackson made the two retainer payments to Liou as well as the payment after the dismissal of the first case. Liou's explanation – that "we rarely fill out the answer" on the SOFA because it duplicates the Rule 2016(b) disclosure statement (Tr. at 12)[5] – does not wash. The Rule 2016(b) disclosure is the *attorney's* statement; the

---

[5] Liou's actual testimony was that the answers required by the SOFA and the Rule 2016(b) disclosure statement are "somewhat duplicitous." (Tr. at 12). Presumably, he meant "somewhat duplicative."

SOFA is the *debtor's* statement. And Jackson did not refrain from answering the SOFA question; he answered it and answered it falsely. Jackson's false statements on the two SOFAs served only to cloud the compensation picture further.

Because disclosure under section 329(a) and Rule 2016(b) is "central to the integrity of the bankruptcy process," failure to disclose is sanctionable. *In re Andreas*, 373 B.R. 864, 872 (Bankr. N.D. Ill. 2007). The sanctions can include partial or total denial of compensation as well as partial or total disgorgement of fees paid. *Id.* "Many courts, perhaps the majority, punish defective disclosure by denying all compensation." *Id.*; *see, e.g., Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 477-78 (6th Cir. 1996) (affirming disgorgement of retainer and noting that "[i]n cases involving an attorney's failure to disclose his fee arrangement under § 329 or Rule 2016 . . . the courts have consistently denied all fees"); *Park-Helena*, 63 F.3d at 882 (affirming denial of all fees as sanction for Rule 2016(b) violation); *Investment Bankers*, 4 F.3d at 1565 (stating that "an attorney who fails to comply with the requirements of § 329 forfeits any right to receive compensation for services"); *Smitty's Truck Stop*, 210 B.R. at 848 (holding that failure to disclose retainer justified denial of all compensation).

A severe sanction is plainly appropriate here. Liou engaged in a pattern of filing false Rule 2016(b) disclosure statements, twice misrepresenting the fees he was charging Jackson, the nature of his fee arrangement with Jackson, even the services he would perform in exchange for Jackson's fees. Liou has been a lawyer for almost fifteen years and has been filing chapter 13 cases as a regular part of his

practice for more than a decade. He had to know better. Yet Liou offered no explanation for the false disclosures – not in his written responses to the trustee's requests for a hearing to examine his fees, and not at the hearing itself.

Under the circumstances, Liou's disgorgement of the full $17,180.37 in fees he received from Jackson is warranted and will be ordered.[9]

### b. Excessive Fees

Because Liou's false Rule 2016(b) disclosure statements require the disgorgement of his fees, a finding that the fees were excessive under section 329(b) is unnecessary. *See Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis)*, 113 F.3d 1040, 1045-46 (9th Cir. 1997). But Liou's fees were excessive, and disgorgement of a substantial amount would therefore be appropriate even if Liou had filed truthful disclosure statements.

Section 329(b) of the Code authorizes the bankruptcy court to determine the "reasonable value" of an attorney's services. 11 U.S.C. § 329(b). If the attorney's fee "exceeds the reasonable value" of his services, the court can cancel any fee agreement or order the return of that part of the fee found "excessive." *Id.* In

---

[9] Disgorgement of the full amount is warranted despite hints at the hearing that the fees were also meant to cover services unrelated to the bankruptcy cases. (*See* Tr. at 7, 16, 22, 24, 31, 34). These hints were never more than vague; the non-bankruptcy legal matters were never specified. (*See, e.g.,* Tr. at 34 (Jackson testimony that "I had other legal matters that I needed an attorney for")). Other evidence, meanwhile, established that Jackson paid the fees strictly for the bankruptcy cases. (*See, e.g.,* Tr. at 36-37 (Jackson admission that he had no fee agreement with Liou for non-bankruptcy work); L. Ex. 4 (letter from Liou to Jackson listing all of the fees as fees for the bankruptcy cases); L. Ex. 5 (same)).

-12-

determining "reasonable value," the court must be "guided by section 330." *Geraci*, 138 F.3d at 318; *see also In re Wiredyne, Inc.*, 3 F.3d 1125, 1128 (7th Cir. 1993). Under section 330, reasonable compensation depends on "the nature, the extent, and the value" of the services. 11 U.S.C. § 330(a)(3). The attorney whose fee has been called into question, not the party questioning it, bears the burden of showing the fee's reasonableness. *Geraci*, 138 F.3d at 318.

Liou did not meet that burden here. In fact, there was a total failure of proof on the reasonableness of the fees because Liou offered *no* evidence of the services he rendered: neither Liou nor Jackson, the only witnesses who testified, said anything about Liou's services. Liou did have admitted into evidence (without objection from the trustee) two exhibits, each bearing a case caption and the title "Supplemental Itemization of Legal Services Provided," and each purporting to itemize Liou's services. (*See* L. Exs. 6-7). But Liou never testified about these exhibits – he was never asked about them – and although Jackson testified about them briefly, he neither identified them nor attested to their accuracy. (*See* Tr. 26-31). On the contrary, Jackson said that the itemizations were not sent to him with any bills and that he first saw them at Liou's office the night before the hearing. (Tr. at 27-28, 30). As evidence of Liou's services, the two itemizations are entitled to no weight.

Rather than testify about the services Jackson received or have Jackson testify about them, Liou sought to justify his fees and services by having Jackson express happiness with them. (Tr. at 23-26). But a debtor's satisfaction alone can never be enough to establish that his attorney's fees are reasonable under section

-13-

329. The point of that section, again, is to have courts oversee attorney-client relationships in bankruptcy cases partly to prevent overbearing attorneys from taking advantage of desperate debtors. *Investment Bankers*, 4 F.3d at 1565; *Berg*, 356 B.R. at 381. That role would be subverted if the debtor's happiness with his attorney's fees and services determined their reasonableness. A debtor "willing to do whatever is necessary" to obtain an attorney, *Investment Bankers*, 4 F.3d at 1565, is equally willing to say whatever is necessary to keep him.

Despite Liou's failure to meet his burden of proof under section 329(b), the court's docket entries in the two cases (of which the court can take judicial notice, *Griffin*, 109 F.3d at 1218 n.1) give some basis for evaluating the reasonableness of his fees. The docket entries suggest that the cases were in fact quite ordinary and did not begin to support the exorbitant fees Liou charged.

The first case (the docket shows) began in October 2007 with the filing of the petition, schedules, and other documents. Following the creditors meeting on December 7, the court continued the matter six times on its confirmation call to see if creditors' objections to the plan could be worked out. In the meantime, Liou proposed two amended chapter 13 plans. Several creditors also moved for modification of the stay, and the trustee filed a motion to dismiss because Jackson was not making plan payments. At last, on June 27, 2008, the court granted the pending motions for stay relief and granted the trustee's motion to dismiss the case.

The second case began in August 2008 with the filing of the petition, schedules, and other documents. Following the creditors meeting on September 8,

Liou moved for a voluntary dismissal of the case but then withdrew the motion, proposed a new plan, and filed amended schedules. Later that month, Liou filed another amended schedule and several other amendments. Agreed orders were then entered imposing the stay – orders made necessary because Liou neglected to seek an extension of the stay. In late October, following two short confirmation hearings, the plan was confirmed. In January 2009, however, the trustee moved to dismiss the case because Jackson again was not making his plan payments. The motion was granted without opposition.

These are histories typical of unsuccessful chapter 13 cases in this district – short, but not particularly nasty or brutish. If anything, in fact, Jackson's two cases involved less work than most. There were no stay relief fights, no valuation disputes, no claim objection hearings, no challenges to exemptions, no requests to avoid liens, no lengthy squabbles over plan provisions. Jackson simply proposed plans, amended the plans once or twice, had a plan confirmed in one case but not the other, and then saw each case dismissed when he failed to make plan payments. Nothing in the docket of either case reflects any particular complexity or any extraordinary lengths to which Liou was required to go.[7] Certainly, nothing about these two rather run-of-the-mill cases warrants $17,180.37, nearly *five times* the $3,500 fee attorneys electing the "no-look" fee in this district receive to do far more extensive work from the beginning to the end of a single case.

---

[7] Only the three agreed orders imposing the stay in the second case are unusual, and the extra work to negotiate those orders was necessary because of Liou's negligent failure to seek an extension of the stay.

In short, Liou's fees for Jackson's two cases were excessive – grossly so. A large portion of the fees would have to be disgorged even if Liou's Rule 2016(b) disclosure statements had been truthful.

### 4. Conclusion

For these reasons, attorney Timothy K. Liou must disgorge to debtor Joe C. Jackson the full $17,180.37 in fees Liou received from Jackson to perform services in chapter 13 bankruptcy cases No. 07 B 18515 and No. 08 B 20776. A separate order will be entered in accordance with this opinion.

Dated: February 27, 2009

                                        _____
                                        A. Benjamin Goldgar
                                        United States Bankruptcy Judge